IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 7, 2006

## COURTNEY CATRELL GOSS v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Fayette County**
**No. 5487     J. Weber McCraw, Judge**

_____

**No. W2005-02842-CCA-R3-PC  - Filed April 10, 2006**

_____

The petitioner, Courtney Catrell Goss,[1] appeals the Fayette County Circuit Court's denial of his petition for post-conviction relief from his guilty plea to rape and the resulting twelve-year sentence. He contends that he did not plead guilty voluntarily and that he received the ineffective assistance of counsel.  Upon review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOSEPH M. TIPTON, J., joined.

Matthew Armour, Somerville, Tennessee, for the appellant, Courtney Catrell Goss.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; and Terry Dycus, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

The record reflects that on November 1, 2003, the then fifteen-year-old petitioner broke into a nursing home, entered the room of a female Alzheimer's patient, and barricaded the door with a chair.  The petitioner removed the patient's clothes, raped her, struck her once in the face, and fled. Witnesses saw the petitioner leave the nursing home, and the police questioned him in his father's presence.  The petitioner gave an audiotaped confession in which he admitted raping and hitting the victim.  He was charged in the Fayette County Juvenile Court but was transferred to circuit court to

_____

[1]Throughout the record, the petitioner's first name is spelled both "Courtney" and "Cortney."

be tried as an adult. The Fayette County Grand Jury charged the petitioner with aggravated rape, and he pled guilty to rape, a Class B felony. Pursuant to the plea agreement, the trial court sentenced the petitioner to twelve years in confinement to be served at one hundred percent. Subsequently, the petitioner filed a petition for post-conviction relief, claiming that his guilty plea was involuntary and that he received the ineffective assistance of trial counsel. The post-conviction court appointed counsel, and counsel amended the petition.

At the evidentiary hearing, the then seventeen-year-old petitioner testified that "I wasn't myself" when he pled guilty. He said that he did not know if his family was present at the guilty plea hearing, that counsel did not explain the guilty plea to him, and that he did not understand what was going to happen when he entered his plea. The petitioner testified that counsel met with him only once, and the petitioner had no other correspondence with her. The petitioner had a psychological evaluation, and counsel presented no mitigating evidence at the guilty plea hearing.

On cross-examination, the petitioner acknowledged that his father was present when he confessed to police, but he maintained that he did not rape the victim. He acknowledged that he and counsel made several appearances in juvenile court regarding his case, but he said that he did not remember meeting with counsel in order to discuss the State's proof against him. He stated that he spoke with his father, aunt, and grandmother about his plea and that they told him it was his "[b]est deal." He said that he understood he was facing a fifteen- to twenty-year sentence for aggravated rape, that he pled guilty to rape, and that he signed a guilty plea form. However, when he pled guilty to rape, the petitioner did not understand that he would be sentenced to eight to twelve years at one hundred percent. The petitioner admitted that he told the trial court at the guilty plea hearing that he wanted to plead guilty, and the petitioner acknowledged that he did not lie to the trial court. The State asked, "[I]f the Judge grants you what you're asking for, you might be looking at twenty-five years day for day. Is that what you want?" The petitioner answered no and stated that he wanted his sentence reduced. On redirect examination, the petitioner stated that he did not remember discussing the plea with his family and that he "[d]id what she told me."

The petitioner's trial attorney testified that she represented the petitioner in three proceedings in juvenile court regarding this case. She met with him in jail once and was "pretty certain" they talked a couple of times on the telephone. The petitioner sent counsel one letter, and counsel wrote letters to the petitioner. Counsel spoke with the petitioner's guardian frequently and spoke with his father on the telephone several times. Counsel stated that the facts of this case were "horrendous" for the defense because the petitioner had broken into a nursing home and had raped an Alzheimer's patient. A witness at the nursing home recognized the petitioner as he fled. The police interviewed the petitioner with his father present, and the petitioner gave an audiotaped confession. Counsel was convinced that a jury would convict the petitioner of aggravated rape and that the trial court would sentence him to twenty-five years in confinement. The petitioner was only fifteen years old, and counsel tried to get "the best deal possible" for him.

Counsel testified that she wrote a letter to the petitioner in which she stated that she did not believe his confession would be suppressed but that "we would try." However, before counsel filed

a motion to suppress, the State made a plea offer. Counsel believed the petitioner should "snap up" the offer before the State changed its mind, and she did not want the petitioner to take a chance on receiving a twenty-five-year sentence. Although the victim was physically and mentally incapacitated and could not identify the petitioner at trial, witnesses at the nursing home could identify him. Therefore, even if the petitioner's confession had been suppressed, witnesses would have testified that the petitioner was at the scene of the crime. Counsel stated she had some concerns about the petitioner's mental state and had him evaluated, but the results showed he was sane and competent. She said the petitioner was a very quiet person and was remorseful.

On cross-examination, counsel testified that the petitioner never admitted to her that he raped the victim but that he told counsel he was sorry for what had happened. Counsel interviewed the two police officers who recorded the petitioner's confession; listened to the audiotape; interviewed a nurse who treated the victim at the Memphis Sexual Assault Resource Center; and spoke with nursing home personnel, an investigator, the petitioner, and his family. Counsel testified that the petitioner had a difficult childhood. Counsel stated that the petitioner's father had killed the petitioner's mother. Afer his mother's murder, the petitioner had lived with his abusive sister until he was taken in by his guardian, Alice Hester. Based on his history, counsel believed the petitioner's case needed extra attention, and she estimated that she worked one hundred hours on the case. The petitioner had been adjudicated delinquent of aggravated burglary in juvenile court, and the State had filed a notice to enhance the petitioner's sentence.

The post-conviction court specifically accredited counsel's testimony and concluded that counsel went over the guilty plea with the petitioner before the guilty plea hearing, that the petitioner understood the consequences of his plea, and that he understood his sentence. The court referred to the guilty plea hearing, noting that the petitioner stated at the plea hearing that he had discussed the guilty plea form with counsel, that he was satisfied with his attorney's representation, that no one was forcing him to plead guilty, and that he did not have any questions about the proceeding. The post-conviction court also noted that the trial court informed the petitioner he would not be eligible for probation. The post-conviction court concluded that the petitioner was not coerced into pleading guilty and that he pled guilty voluntarily. As to the petitioner's ineffective assistance of counsel claim, the post-conviction court concluded that in light of the overwhelming evidence against the petitioner, counsel negotiated the best plea possible. Counsel investigated the case and spoke with the petitioner's family about the State's evidence. Counsel also discussed the evidence and possible sentences with the petitioner. The court concluded that the petitioner failed to show that counsel rendered deficient performance or that he was prejudiced by any deficiency.

## II. Analysis

The petitioner claims that trial counsel and his family coerced him into pleading guilty and, therefore, that his guilty plea was involuntary. In support of his argument, he contends that he was only fifteen years old at the time of his plea, had a potentially reduced mental capacity, and did not understand the guilty plea proceeding. He also claims that he received the ineffective assistance of counsel because counsel persuaded him to plead guilty by telling him that he would probably be

convicted at trial and because she failed to file a motion to suppress his confession. He contends that but for counsel's actions, he would not have pled guilty and would have gone to trial. The State claims that the post-conviction court properly denied the petition for post-conviction relief. We agree with the State.

To be successful in his claim for post-conviction relief, the petitioner must prove all factual allegations contained in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.2 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, we afford the post-conviction court's findings of fact the weight of a jury verdict, with such findings being conclusive on appeal absent a showing that the evidence in the record preponderates against those findings. Id. at 578.

When a defendant enters a guilty plea, certain constitutional rights are waived, including the privilege against self-incrimination, the right to confront witnesses, and the right to a trial by jury. Boykin v. Alabama, 395 U.S. 238, 243, 89 S. Ct. 1709, 1712 (1969). Therefore, in order to comply with constitutional requirements, a guilty plea must be a "voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31, 91 S. Ct. 160, 164 (1970). In determining whether a petitioner's guilty plea was knowing and voluntary, this court must look at the totality of the circumstances. State v. Turner, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995). "This court is bound by the post-conviction court's findings unless the evidence preponderates otherwise." Bates v. State, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). However, we will review the post-conviction court's conclusions of law purely de novo. Id. "To establish ineffective assistance of counsel, the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)). In evaluating whether the petitioner has met this burden, this court must determine whether counsel's performance was within the range of competence required of attorneys in criminal cases. See Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Moreover, in the context of a guilty plea, "the petitioner must show 'prejudice' by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial." Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998); see also Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985).

Turning to the instant case, we initially note that the petitioner has failed to include a transcript of the guilty plea hearing in the record for our review. Much of the post-conviction court's decision was based upon that hearing. It is the petitioner's duty to make sure that a complete and accurate record is before this court on appeal; otherwise, the issues raised by the petitioner may be considered waived. See Thompson v. State, 958 S.W.2d 156, 172 (Tenn. Crim. App. 1997). However, based upon the testimony at the post-conviction hearing, we can conclude that the weight of the evidence does not preponderate against the post-conviction court's findings of fact.

Regarding the petitioner's claim that his guilty plea was involuntary, the petitioner testified that he talked with his family about the plea and acknowledged signing the guilty plea agreement form, which specified the State's recommended sentence. He also said that he told the trial court he wanted to plead guilty and that he did not lie to the trial court. We note that the State introduced into evidence a letter counsel wrote to the petitioner before his guilty plea hearing. In the letter, counsel stated that the State had a very strong case against him and explained the punishment for aggravated rape. Counsel also explained the State's offer for him to plead guilty to rape in exchange for a twelve-year sentence to be served at one hundred percent. In the letter, counsel recommended that the petitioner accept the offer but said, "It is your decision to make" and advised him to think about the offer carefully. We conclude that the post-conviction court correctly held that the petitioner's guilty plea was voluntary.

As to his claim that he received the ineffective assistance of counsel, counsel testified that she met with the petitioner once in jail, corresponded with him and his family, investigated his case, and had him psychologically evaluated. She also stated that the State made a plea offer before she filed a motion to suppress; that she advised the petitioner to accept the offer due to the "horrendous" facts in the case; and that even if the trial court had suppressed the petitioner's statement to police, witnesses placed the petitioner at the scene of the crime. The post-conviction court specifically accredited her testimony, and nothing in the record demonstrates that counsel rendered deficient performance. We also note that the petitioner answered no when the State asked him, "[I]f the Judge grants you what you're asking for, you might be looking at twenty-five years day for day. Is that what you want?" We believe this answer demonstrates that the petitioner did not want to go to trial for aggravated rape and demonstrates that he was not prejudiced by any deficiency. Thus, the post-conviction court properly concluded that the petitioner did not receive the ineffective assistance of counsel.

## III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE